2004 UT App 54

**Beverly Ann BURGE fka Beverly Ann Facio, Petitioner and Appellee,**

v.

**Gary Thomas FACIO, Respondent and Appellant.**

No. 20020929–CA.

Court of Appeals of Utah.

March 11, 2004.

Gary Thomas Facio, Lakewood, Ohio, Appellant Pro Se.

Helen E. Christian, Gustin & Christian, Salt Lake City, for Appellee.

Before BILLINGS, P.J., DAVIS and ORME, JJ.

OPINION

BILLINGS, Presiding Judge:

¶ 1 Gary Thomas Facio Husband appeals from the property distribution in a decree of divorce, arguing that the trial court abused

its discretion by enforcing a prior order of separate maintenance (Maintenance Order) because (1) Husband and Beverly Ann Burge (Wife) had reconciled, thereby voiding the Maintenance Order; and (2) Husband's original consent to the terms of the Maintenance Order had not been voluntary. We affirm.

## BACKGROUND

¶ 2 Husband and Wife were married on March 16, 1974. Wife first filed for divorce in 1982, believing that Husband was financially irresponsible and had created unnecessary debt for the family. After discussions with Husband, however, Wife voluntarily dismissed the divorce proceeding.

¶ 3 Wife again filed for divorce in 1991 when she discovered that Husband had (1) cashed-in various IRAs funded by Wife; (2) liquidated a college fund established by Wife for the oldest child; (3) cashed-in various gifts from Wife's family; (4) incurred numerous debts for his own personal use; and (5) failed to file federal and state tax returns. Subsequently, Husband convinced Wife to seek an order for separate maintenance instead of a divorce decree.

¶ 4 Wife filed a Complaint for Separate Maintenance on August 11, 1992. Husband consulted with Brian Barnard, an attorney who had represented him previously. Subsequently, Husband executed an Acceptance, Waiver, and Consent by which he agreed that the trial court could enter an order for separate maintenance consistent with Wife's complaint. Accordingly, the trial court entered the Maintenance Order on August 28, 1992.

¶ 5 Relevant portions of the Maintenance Order provide as follows: (1) Wife retains all interest in her house, (2) Wife is awarded sole physical custody of both children, (3) neither party is awarded alimony, (4) Wife retains all interest in her IRA accounts, and (5) the personal property is to be divided in a manner the parties deem fair and equitable.

¶ 6 After entry of the Maintenance Order, the parties lived separately until late 1993 or early 1994. During the time they lived apart, Husband repeatedly represented to Wife that he had improved his life in ways that addressed Wife's concerns. Wife subsequently agreed to attempt reconciliation if Husband kept his promises.

¶ 7 In late 1993 or early 1994, Wife learned that Husband had lost his housing and agreed to allow Husband to move back into her house. Nonetheless, the parties continued to adhere to the terms of the Maintenance Order as if they lived separately. For instance, Wife alone incurred liabilities and paid bills related to maintaining the household, and Husband believed that he had no financial obligation to Wife's household or the children other than his obligation under the Maintenance Order to pay $500 per month in child support. Both parties repeatedly acknowledged that the Maintenance Order was still in effect.

¶ 8 Despite his promises to become more fiscally responsible and to remain monogamous, Husband continued to incur unnecessary debt, eventually failed to make child support payments, and dated other women. Under oath, Husband acknowledged that he had not kept his promises.

¶ 9 Because Husband had failed to keep his promises, in 1997 Wife asked Husband to move out. On October 7, 1997, Wife filed for divorce. On March 19, 1999, the trial court granted Wife a divorce based upon irreconcilable differences, but bifurcated financial issues. At trial on the financial issues, Husband contested only the distribution of equity acquired since 1993 in both Wife's house and Wife's Postal Service retirement accounts.

¶ 10 In the Second Amended Divorce Decree, the trial court declined to award Husband any interest in Wife's house or her Postal Service retirement accounts. In addition, the trial court refused to award alimony to either party and awarded items of personal property to the party who possessed them.

¶ 11 In the Second Amended Findings of Fact and Conclusions of Law, the trial court explained its rationale for the property distribution. Wife was awarded her house because the trial court had "awarded this property to her in the [Maintenance Order] and because any contribution to the equity since that time has been made from [Wife's] separate funds." Wife was awarded all title to

her retirement accounts "because she obtained these additional benefits through her separate funds." No alimony was awarded to either party because both parties are "able-bodied and employed on a full time basis[,]" and Husband "is voluntarily underemployed." Husband appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 12 Husband contends that the trial court erred by enforcing the Maintenance Order when it determined the distribution of property in the Second Amended Divorce Decree. "In order to reverse the trial court's distribution of property in a divorce action, we must find that it 'works such a manifest injustice or inequity as to indicate a clear abuse of discretion.' " *Gibbons v. Gibbons*, 656 P.2d 407, 409 (Utah 1982) (quoting *Turner v. Turner*, 649 P.2d 6, 8 (1982)). "[I]n exercising their discretion in divorce actions, trial courts 'need be guided by the general purpose to be achieved by a property division, which is to allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives.' " *Peterson v. Peterson*, 748 P.2d 593,˙594 (Utah Ct.App.1988) (quoting *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987)).

## ANALYSIS

¶ 13 Husband contends that the trial court erred by enforcing the Maintenance Order when it distributed property in the Second Amended Divorce Decree. In support of his contention, Husband argues that the Maintenance Order was void because (1) the parties had reconciled while Husband lived with Wife between 1993 and 1997 and (2) Husband's consent to the Maintenance Order in 1992 had not been voluntary.

¶ 14 Wife argues that the trial court did not abuse its discretion by enforcing the Maintenance Order because the factual findings are sufficient to support the court's conclusions that (1) the parties had not voluntarily and permanently reconciled and (2) Husband's consent to the Maintenance Order in 1992 had been voluntary.[1]

¶ 15 First, we address Husband's apparent challenge to the trial court's factual findings. Utah Rule of Civil Procedure 52(a) provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." *Id.* To challenge a trial court's findings of fact, "[t]he challenging party must marshal all relevant evidence presented at trial which tends to support the findings and demonstrate why the findings are clearly erroneous." *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah Ct.App.1991). Husband fails to cite any evidence or testimony that supports the trial court's findings. Therefore, we accept the trial court's factual findings in the Second Amended Findings of Fact and Conclusions of Law and Second Amended Decree of Divorce.

¶ 16 Second, we address Husband's contention that the trial court abused its discretion by enforcing the Maintenance Order. A trial "court may change the support or maintenance of a party from time to time according to circumstances, and *may* terminate altogether any obligation *upon satisfactory proof of voluntary and permanent reconciliation.*" Utah Code Ann. § 30–4–3(3) (1999) (emphasis added). Thus, if there is satisfactory proof of voluntary and permanent reconciliation between Husband and Wife, then a trial court has *discretion* to terminate the Maintenance Order.

¶ 17 Husband cites numerous cases from other jurisdictions that discuss when sufficient reconciliation has occurred to void a separate maintenance agreement or order. Yet the principles of common law at issue in those cases require only reconciliation not "permanent" reconciliation as Utah's statute

---

1. Wife also seeks an award of attorney fees on appeal as the prevailing party. However, in a divorce action, when "attorney fees [are] not awarded below, neither party is entitled to attorney fees on appeal." *Baker v. Baker*, 866 P.2d 540, 547 (Utah Ct.App.1993). In the Second Amended Decree of Divorce, the trial court ordered the parties to assume and pay their own attorney fees and costs. Thus, we decline to award Wife attorney fees on appeal. Insofar as Wife is suggesting she should be awarded fees because the appeal is frivolous, we are not persuaded.

requires. *See In re Marriage of Reeser*, 635 P.2d 930, 932 (Colo.Ct.App.1981) (discussing what constitutes reconciliation under a common law standard); *Cox v. Cox*, 659 So.2d 1051, 1053 (Fla.1995) (same); *Miller v. Miller*, 189 Mont. 356, 616 P.2d 313, 316 (1980) (same); *Brazina v. Brazina*, 233 N.J.Super. 145, 558 A.2d 69, 71–72 (1989) (same); *In re Estate of Adamee*, 291 N.C. 386, 230 S.E.2d 541, 546 (N.C.1976) (same).

¶ 18 In this case, the findings of fact establish that any reconciliation was conditional, not permanent. Wife agreed to attempt a reconciliation with Husband if he remained monogamous and became more fiscally responsible. Husband did neither. Husband had girlfriends and continued to incur debt as he had previously. In fact, it was Husband's failure to change his behavior as he had promised that led Wife to file for divorce rather than merely continue to live under the terms of the Maintenance Order. Thus, the parties never permanently reconciled, but rather attempted unsuccessfully to resolve issues which might have permitted reconciliation. Because there is not satisfactory proof of voluntary and permanent reconciliation between Husband and Wife, the trial court did not abuse its discretion by enforcing the Maintenance Order.

¶ 19 Finally, we address Husband's contention that the Maintenance Order was void because his consent to its terms had not been voluntary. This contention is without merit. In 1992, Husband received a copy of Wife's Complaint for Separate Maintenance and did not contest the relief it requested. In fact, Husband consulted with his attorney, Brian Barnard, regarding the proposed terms of the Maintenance Order and thereafter consented to its terms in writing. There is no evidence that duress, coercion, fraud, or trickery induced Husband to consent to the terms of the Maintenance Order. Moreover, after the Maintenance Order was entered on August 28, 1991, Husband honored its terms and repeatedly acknowledged that he was bound by it. There is no evidence that Husband found the terms of the Maintenance Order objectionable until 1997, when Wife filed for divorce. Thus, we hold that the trial court correctly found that Husband's consent to the terms of the Maintenance Order had been voluntary.

## CONCLUSION

¶ 20 The Maintenance Order provides that Wife retains all interest in both her house and her IRA accounts. The Maintenance Order also provides that neither party is awarded alimony and items of personal property are to be divided in a manner the parties deem fair and equitable at the time. The trial court's division of property in the Second Amended Decree of Divorce is consistent with the terms of the Maintenance Order, which remained enforceable. Thus, the trial court did not abuse its discretion in its distribution of property between Husband and Wife. Accordingly, we affirm.

¶ 21 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.